[Judge Sibley of the Fourth Circuit, taking the place of Judge Adams.]

STATE FOR THE USE OF PERRY COUNTY V. JOHN C. BROWN ET AL.

1. UNLAWFUL RECEIPT OF PUBLIC MONEY—DEFECTIVE PLEADING.

An allegation in a suit to recover money claimed to have been paid illegally to a county official, that such official " unlawfully received on an account duly presented to and allowed by the commissioners of Perry county, Ohio, the

sum of thirteen dollars for expenses, in addition to his *per diem,*" without averring facts, as to the services rendered. from which a court can say that the compensation was unlawfully made, fails to state a cause of action.

**2. SAME—PLEADING SUFFICIENT AGAINST DEMURRER.**

An allegation in such suit, that at a specified time an infirmary director, naming him, unlawfully received on an account duly presented and allowed by the commissioners of his county, for alleged services rendered to the county as such director in keeping up the journal of the board of infirmary directors, a·certain sum, states, as against demurrer, a cause of action for the illegal receipt of public money.

**3. INFIRMARY DIRECTORS—COMPENSATION.**

'No allowance other than his *per diem,* for attendance at meetings, can be lawfully made to an infirmary director, clerk of the board, for keeping a record of the proceedings and transactions of meetings.

HEARD ON ERROR.

SIBLEY, J.

The state of Ohio, for the use of Perry county, by Thomas B. Williams, prosecuting attorney, against John C. Brown, is one of a series of cases depending upon essentially the same state of facts relating to different individuals in their capacity of infirmary directors of this county, and seeking to recover back from them and their sureties on an official bond, certain sums specified and alleged to have been received by them as money from the county, without lawful authority to take it.

I speak now in a general way as to the averments of the petition. There are two classes of counts, I believe, in each of the·cases against the different directors. One seeks to recover back money paid by order of the commissioners of the county, for extra services for keeping the journal of the transactions of the infirmary board of directors; and the· other as payments for expenses.

These are to be considered separately, because, under our Revised Statutes, they present different questions. The sections involved I will refer to so far as necessary to bring into view the provisions that are in contention. First, I read a passage from sec. 962, Rev. Stat., relied upon, viz :

" The directors shall appoint a superintendent, who shall reside in some apartment of the infirmary or other building contiguous thereto, and shall receive such compensation for his services as they determine. He shall perform such duties as they may impose upon him, and be governed in all respects by their rules and regulations, and he shall not be removed by them except for good and sufficient cause ; but in no case shall the directors appoint one of their own number, superintendent, nor shall any director be eligible to hold any other office, directly or indirectly, in the infirmary, or receive any compensation whatever, as physician, or otherwise, either directly or indirectly, wherein the appointing power is vested in the board of directors."

The application of the last clause is invoked—" wherein the appointing power is vested in the board of directors."

Under sec. 961, Rev. Stat., when the board organizes, the law requires it to appoint one of its number president, and another, clerk, and it is the duty of the clerk to keep the transactions and proceedings of its meetings.

I refer to Sec. 962, Rev. Stat., simply because of the reading we give it, which is, that it relates to appointments in connection with the

administration of affairs in the infirmary. It has no application to an appointment under the other section, but debars the infirmary directors from appointing one of their number for any services done in or about the infirmary, under this provision, and excludes them from compensation for any work of administration in the infirmary, which belongs to the superintendent except as they are paid by their *per diem*. It is not, therefore, a limitation upon payments that may be made to a clerk, simply because, from the language of the statute, he is looked upon as appointed by the directors, by an election of one of their number, a designation or agreement that one shall act as clerk, and another as president.

The case has been fully and ably argued and every consideration presented to the court, perhaps that is necessary to the determination of the case. Counsel, as we understand, do not really differ very much regarding what the law is outside of the question that I have just disposed of. On the one hand, it is contended that the petition, in order to state a cause of action, must show by the facts averred, that the money received by this official was illegally received;'which seems to be agreed to by all. The question here is, first, as to the construction of the petition, with regard to its averments; and secondly, as to the application to the petition of the provisions of the statute in regard to compensation.

Section 968 Rev. Stat., limits the compensation of infirmary directors to two dollars and fifty cents a day for each day's attendance, and the directors, it says, may be paid a reasonable compensation for extra services rendered in their official capacity, other than in attending regular and called meetings, not exceeding that sum. So, it is evident that the statute contemplates the performance and the compensation for extra services in their capacity of infirmary directors, when those services are other than their attendance upon their meetings. Of course, there is no dispute about its plain provisions, but only as to one line of allegations in the petition, and that is in respect to the alleged wrongful or unlawful receipt of money for expenses.

I will read one of the counts, in order that the question may be fairly brought into view :

."Second cause of action: That on the third day of March, 1891, said John C. Brown, as such infirmary director aforesaid, unlawfully received on an account duly presented to and allowed by the commissioners of said Perry county, Ohio, the sum of thirteen dollars for expenses, in addition to his *per diem* as such infirmary director, when in fact no expenses had been incurred by him as such infirmary director which he was in law entitled to, and which said sum was paid to said John C. Brown, as infirmary director aforesaid, out of the county funds in the treasury of said Perry county, Ohio."

Now, it is contended, and we think the proposition is well made, that this count is defective in a single particular. We read it as though the word "unlawful" were stricken out, not regarding that as adding anything to its legal import or effect. The defect for which contention is made, and which we think exists in this class of counts is that no fact is averred from which the court can say that a compensation, which the statute authorizes in certain instances, was unlawfully made.

As it is within the power of the county commissioners to make a valid payment for extra services in some instances even though it is alleged that this was in addition to the *per diem* of the directors, the

the case against them is · not made out. There is a failure to specify what the character of the extra service was; hence, for aught that appears, it may have been such as the commissioners were authorized to pay.

Now, it may be that it was impossible for the pleader to particularize—that there is nothing in the county records to show what the exact character of these services was. In that case we think the pleader might save himself without going into the particulars, either by showing that these payments were for services made while in the discharge of duties which entitled to the *per diem* only, or that he was unable to specify, the record not having been properly kept. The commissioners ought not to pay any accounts without its going onto their records, so that any tax payer could look at and see what had been paid out of the county funds and for what. It is their duty, under the statute, to keep that kind of record, and when they fail to do so they fail to discharge the duties that are upon them under and by virtue of their position. But if that was not done, the pleader might aver that he was unable to specify, further than to allege that a service was rendered by the infirmary directors not authorized by law. He must excuse himself by an averment of that character, or else state the facts as they occurred, if he would rely upon them.

We, therefore, are quite clear that this count is subject to demurrer, and that the court below, in sustaining the demurrer to that line of counts in the various cases, fell into no error.

I come back to the other class of counts, one of which, so far as it is material, I now read: "That on the third day of June, 1891, Said John C. Brown, as such infirmary director aforesaid, unlawfully received on an account duly presented and allowed by the commissioners of Perry county, for alleged services rendered said county as infirmary director, in keeping up the journal of said board of infirmary directors of said county aforesaid, the sum of fifteen dollars, which said sum was paid to the said John C. Brown, as such infirmary director aforesaid, out of the county funds in the treasury of said county as compensation for said services."

Now, that count is good on one view of the law, which I shall state presently. By authority Jones v. Commissioners, 57 Ohio St., 189, whose form has been followed. and under holding of the Supreme Court, a demurrer would not lie, if the law be, that for keeping up the journal of the infirmary directors no compensation other than the *per diem* can be allowed by the commissioners, or any other authority, out of the funds of the county.

That brings us to the consideration of Sec. 961, Rev. Stat., on which the whole matter depends. The last clause, after providing for their organization, by the appointing of one of their number as president, and another, clerk, says, the board shall meet quarter yearly at the infirmary, and the president may call a special meeting of the board at any time he deems it necessary; the directors shall keep a book, in which the clerk shall record the proceedings of their meetings and all their transactions, which book shall at all times be open to the inspection of the public.

The question here narrows itself down to whether they are entitled to anything other than the *per diem* for this service. We are perfectly clear that they are not. The law prescribes that the board shall organ-

State v. Brown.

ize and that the journal shall be kept, and it implies clearly, that, as the transactions occur, one of their number shall write them down; he is required to attend the board meetings; he is allowed a sum for that, and the fact that he is made a clerk goes as a duty of his office by the selection of his fellows. He is not to be compensated for extra services; it is not an extra service; it is simply a service that he is called to perform by virtue of his position and what the law requires in order that they may have a record of their transactions. We do not think the case is really open to serious debate on that proposition.

Now, whether he sees fit to make a memorandum or brief note and write it up afterwards, or to take it down as it occurs, is wholly immaterial; if he wants to take two or three days to write it, he cannot charge the county. It would open the door to wide abuse, if the infirmary board were to allow him to make a mere note in discharging any duty in that regard, or any considerable portion of his duty, and take it home and work at it day by day until he would put in a week's time in writing up a record.

The tendency is sufficiently marked to increase compensation of county officials, without the courts opening the door to anything which would be so susceptible to abuse. They accept the office understanding what its duties are; what compensation is provided, and in the discharge of their duties it should not be permitted that they should have anything beyond what the law expressly provides, or by reasonable implication entitles them to receive. The result is, obviously, that this count shows an illegal receipt of money.

For this class of counts it is not necessary to aver particularly that it is illegal, as the Jones case has perfectly well settled, and if there was money received when there was no authority to receive it out of the treasury, it makes such payment unlawful, as against the policy of the law, and as against those who are entitled to have the money held in the treasury of the county.

We think, therefore, in this respect, the learned court fell into error in sustaining the demurrer; that the demurrer to that line of counts should have been overruled, and the defendants put to their answer, if any they have.

The judgment will therefore be reversed and remanded, with instructions to overrule the demurrer to one class of counts—those for keeping up the journal of the board.

*T. B. Williams*, Prosecuting Attorney, for plaintiff in error.

*Tussing & Kelly, Donahue, Spencer & Donahue, John Ferguson,* and *Owen Yost*, for defendant in error.